**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALISHA ATWATER, | ) | |
| Plaintiff, | ) | Case No.: |
| | ) | |
| v. | ) | Judge: |
| | ) | |
| BOARD OF EDUCATION OF THE CITY OF, | ) | Magistrate Judge: |
| CHICAGO and RANOULE TATUM | ) | |
| Defendants | ) | **JURY DEMANDED** |
| | ) | |

## COMPLAINT

**NOW COMES** the Plaintiff, Alisha Atwater ("Atwater" or "Plaintiff") by and through her

undersigned attorneys and for her Complaint against the Defendants Board of Education of the City

of Chicago ("Board of Education") and Ranoule Tatum ("Tatum"), states as follows:

### NATURE OF THE CASE

1.      That Count I is brought against the Board of Education for violations of Title VII of the Civil

Rights Act, 42 U.S.C. section 2000e, as amended.

2.      That Count II is brought against the Board of Education and Tatum for violations of the

Illinois Human Rights Act, 775 ILCS 5/ *et seq.*

### JURISDICTION AND VENUE

3.      That this court has jurisdiction over this matter pursuant to 775 ILCS 5/2-102(D) of the

Illinois Human Rights Act, 42 U.S.C. section 2000e, 28 U.S.C. § 1331, and 28 U.S.C. §

1367.

4.      That venue in the Northern District of Illinois is proper as the claim for relief arose in

Chicago, Cook County, Illinois.

5.     That all conditions precedent have been fulfilled by Plaintiff, including the filing of a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and receipt of an IDHR Director's order. **(Director's orders attached as Exhibit A and Exhibit B).**

6.     All conditions precedent have been fulfilled by Plaintiff, including the filing of a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") of the United States Government.

7.     That Plaintiff filed her charge of discrimination against the Board of Education with the IDHR which cross-filed the same charge with the EEOC on May 20, 2011.

8.     That Plaintiff filed her charge of discrimination against Ranoule Tatum with the IDHR on May 20, 2011.

9.     That more than 180 days have lapsed since the filing of Plaintiff's charge of discrimination against the Board of Education and she is entitled to a Right-to-Sue letter from the Department of Justice.

10.     That Plaintiff has requested, in writing, a request for a Right-to-Sue from the Department of Justice.

## PARTIES

11.     That Plaintiff is a female and resident of the State of Illinois.

12.     That at all times complained herein, Atwater was and remains employed at the Board of Education within the Chicago Public Schools.

13.     That at all times pertinent herein, the Board of Education have are engaged in an industry affecting commerce and have fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or proceeding year.

14. That on approximately September 20, 2010, Tatum became Atwater's Supervisor and worked as the Attendance and Truancy Coordinator with the Chicago Public Schools.

15. That at all times pertinent herein, Tatum was employed by Board of Education as a supervisor.

## FACTS

16. That Plaintiff incorporates the preceding paragraphs by reference here.

17. That the Chicago Board of Education hired Atwater on approximately July 1, 2007 to work as a Youth Outreach Worker.

18. That in approximately September 2010, Tatum became Atwater's direct supervisor.

19. That prior to becoming Atwater's supervisor, Tatum was listed on the City's do not hire list.

20. That the City employed Tatum regardless of his status on the do not hire list.

21. That shortly after Tatum became Atwater's supervisor, he quickly began to start sexually harassing her.

22. That beginning in late December or early January 2011, Tatum would make degrading statements to Atwater such as, "how is your boyfriend treating you?" and asking her, "What kind of guys you like?"

23. That in addition, in approximately January 2011, Tatum mandated that Atwater work in Tatum's area. Tatum mandated Atwater no longer check in at her usual place of business.

24. That because Tatum mandated Atwater no longer check in at her usual place of business, Tatum would often tell Atwater, "you owe me."

25. That Atwater understood the comment in the previous paragraph to be in reference to sexual favors for Tatum.

26.   That on approximately January 12, 2011, Atwater was wearing all black to work. Tatum said to Atwater, "your man must not know you left the house like that, black turns me on."

27.   That on January 12, 2011, Atwater informed the Department of Education's Equal Employment Compliance Office Administrator, Corrine Leak, that Tatum was harassing her and informed her of the incessant comments Tatum made to her on January 12, 2011.

28.   That in response to Atwater's complaints, the Department of Education did absolutely nothing and conducted no investigation.

29.   That on approximately January 13, 2011, Tatum said to Atwater, "stop coming by the office smelling like that or I'll have to do something."

30.   That throughout the months of December and January 2011, Tatum would ask Atwater personal intrusive questions, such as, "What kind of guys do you like?" "Is your man treating you right?" "How is your boyfriend treating you?" and "Is your man acting right?"

31.   That on approximately January 13, 2011, while trying on safety vests, Tatum grabbed underneath Atwater's vest touching her breasts and said, "you are big, but big in the right place."

32.   That Atwater's co-workers Bobbi Jo Henry, Theresa Johnson, and Janice Hunter all witnessed Tatum touch Atwater's breasts for several seconds.

33.   That on approximately January 14, 2011, Tatum told Atwater, "you are smelling good," and stated to Atwater,"we are up here by ourselves (the office), ain't nobody here, you are going to make me do something to you."

34.   That after the incident in the preceding paragraph, Atwater immediately told Tatum to stop making suggestive and unwelcome comments to her.

35.  That on approximately January 19, 2011, Tatum told Atwater, "You owe me.  You are getting miles and no one else is and you owe me."

36.  That on approximately January 25, 2011, Tatum told Atwater that he had a dream about her and that she won a million dollars.  When asked why, Tatum responded, "you sued me for sexual harassment" and began to laugh in Atwater's face.

37.  That immediately following the incident in the preceding paragraph, Atwater told Tatum, "you really need to stop."

38.  That on approximately January 28, 2011, Tatum asked Atwater, "what would your man say if you were bringing back an extra $60-$70 a month?"

39.  That Atwater understood the comment in the preceding paragraph as a sexual invitation from Tatum to engage in sexual favors in return for money.

40.  That on approximately January 31, 2011, Tatum again asked Atwater "what would your man say if you were bringing home an extra $60-$70 a month?"  Tatum said this in a sarcastic tone and then stated, "I know gas prices are high."

41.  That on approximately February 2, 2011, Tatum again told Atwater that she smelled good. At that time, Tatum picked up a bottle of lotion and asked Atwater "is this what you are wearing? Im going to have to take it."  Tatum then said, "I told you to stop," while insinuating that Atwater was turning him on.

42.  That on approximately February 3 or 4, 2011, while the Chicago Board of Education and Chicago Public School employs observed a snow day, Tatum texted Atwater, "I have your W-2s, come get them."  Atwater knew there was nobody in the office.

43.  That in approximately the end of February or early March 2011, Atwater complained to

Angela Hodge regarding Tatum's sexually offensive and aggressive behavior.

44. That after Atwater complained to Angela Hodge in approximately the end of February or early March 2011, Atwater continued to follow-up and complain to Hodge on numerous ocassions regarding Tatum's sexually offensive and aggressive behavior.

45. That on approximately March 1, 2011, Tatum directed Atwater to stop by his office in order to be reimbursed for miles that she had driven to work activities. Tatum informed Atwater that they would be conducting a home visit together that day.

46. That on approximately March 1, 2011, Tatum and Atwater did not conduct a home visit together. Instead, Tatum required Atwater to accompany hm to Ellington school where Tatum simply dropped off copy paper.

47. That beginning in approximately early March 2011, Atwater complained to Ms. McNutt on numerous occasions regarding Tatum's sexually offensive and aggressive behavior.

48. That in response to Atwater's numerous complaints, neither Ms. McNutt nor Angela Hodge did anything in response.

49. That on March 17, 2011, Tatum approached Atwater and told her, "you got your shirt all zipped up, I cant event see anything."

50. That additionally on approximately March 17, 2011, Tatum sent Atwater a text message that said "I want to go down on you and make you extremely happy. Then I want to come back up slowly and fuck you real good and hard. Your truly, gas prices!"

51. That on approximately March 21, 2011, Tatum told Atwater that he needed to go on a home visit at 1:30 pm. Atwater was not able to go on the home visit because she was scheduled to leave at 2:00 pm that day. Tatum told Atwater that the home was close to the school and

that he had wrote the address to the home on a piece of paper.

52.     That Tatum showed Atwater the piece of paper mentioned in the previous paragraph which

        showed Atwater the address and asked her if she knew where it was.  That Atwater noticed

        on the piece of paper that Tatum had written down his home address and included his

        personal phone number.

53.     That on March 24, 2011, Tatum asked Atwater why she was not having any pizza that Tatum

        had purchased.  Atwater told Tatum that she had brought her own lunch.  Tatum replied, "Oh

        you're trying to keep that 9/10 (dress size), you wear it well."

54.     That on March 24, 2011, Tatum told Atwater that he would go to her school "to spend time

        with you."

55.     That on approximately March 24, 2011, Atwater wrote a letter to Leak regarding Tatum's

        inappropriate conduct towards her.

56.     That Supervisor Angela Hodge witnessed Tatum make several inappropriate and suggestive

        comments to Atwater.

57.     That on approximately March 25, 2011, Atwater filed a complaint with the Law and Labor

        department.

58.     That while filing her second complaint, Tatum called Atwater and asked her where she was

        at.

59.     That after making her complaint to the Law and Labor Department, several days later,

        Atwater asked Ms. McNutt why nothing had been done with Tatum and why no investigation

        had been completed.

60.     That in response to Atwater's repeated inquiries to Ms. McNutt, Ms. McNutt attended a staff

meeting with Atwater and asked Tatum to leave the meeting.

61.   That Tatum left the meeting described in the preceding paragraph, however, he left his city-issued cellular phone in the room and secretly recorded the meeting.

62.   That during this meeting, Atwater's co-worker's corroborate Atwater's stories and levied complaints of their own against Tatum.

63.   That after the staff meeting, Tatum approached numerous co-workers of Atwater and asked them if they would testify against him at court.

64.   That between approximately March 26 and April 4, 2011, Tatum went to numerous Chicago Public Schools and informed staff and administrators that it was Atwater's fault that he was no longer working with them.

65.   That on approximately March 31, 2011, Tatum went to a Chicago Public School that Atwater often worked at and proceeded to rifle and inspect her work desk and personal belongings.

66.   That the Principal of the Chicago Public School identified in the preceding paragraph also called Ms. McNutt to inform her that Tatum was rummaging and going through Atwater's desk and personal belongings.

67.   That Ms. McNutt and the Board of Education did nothing in response to Tatum going through Atwater's desk and personal belongings.

68.   That on April 6, 2011, after numerous complaints, the Board of Education suspended Tatum, with pay.

69.   That after being suspended with pay on April 6, 2011, Tatum still retained his city-issued cellular phone that he used to continue to intimidate, harass, and frighten Atwater.

70.   That in response to Atwater's complaints to the Board of Education, a Board of Education

employee stated to Atwater, "its up to you how you do this but a lawyer is going to be a lot of money." This was done in an attempt to dissuade Atwater from engaging in her statutorily protected rights and remedies.

71.   That on April 12, Tatum called Atwater's co-worker named Mauricio. Tatum asked Mauricio where he was at and whether Atwater was with him. Atwater was in fact with Mauricio riding in a car with him.

72.   That after his suspension, Tatum informed co-workers Teresa Johnson and her mother that it was Atwater's fault they were being written up for being late because Tatum was no longer there to overlook such conduct.

73.   That from approximately March 25, 2011 through May 6, 2011, Tatum used his city-issued cellular phone to continue to call Atwater and would just laugh in response to her answering the phone call. Atwater constantly asked Tatum to stop calling her.

74.   That on May 6, 2011 Atwater was required to obtain an Order of Protection against Tatum as he continued to intimidate, harass, frighten and cause emotional distress upon her.

## COUNT I
## COMPLAINT OF SEXUAL HARASSMENT DIRECTED AT
## BOARD OF EDUCATION PURSUANT TO TITLE VII

75.   Plaintiff incorporates the preceding paragraphs by reference herien.

76.   That throughout her employment, Plaintiff has been and remains a conscientious employee who performed assigned tasks in an acceptable manner consistent with Defendants' standards and regulations.

77.   That Defendant condoned the sexual harassment of Plaintiff and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling, and

instructions to its employees and officers.

78.    That Defendants condoned the sexual harassment of Plaintiff and failed to maintain a
harassment-free work environment by failing to employ an effective anti-sexual harassment
policy with respect to its employees and officers.

79.    That as a result of these failures by the Board of Education, Tatum continued to force his
unwelcome sexual advances and offensive conduct upon Plaintiff and served to intimidate
and frighten her.

80.    That Defendants' treatment of Plaintiff was motivated by evil motive and intent, and was
recklessly and callously indifferent to Plaintiff's federally protected rights.

81.    That the sexual harassment that Plaintiff was subjected to at the hands of Defendants, its
agent, representative and employee was persistent in nature, unwelcome, extremely
offensive, humiliating, and effective in creating a hostile and intimidating work environment
for said Plaintiff.

82.    That said continuous and persistent sexual harassment adversely affected the terms and
conditions of Plaintiff's employment with the Board of Education.

83.    That as a further direct and proximate result of said unlawful employment practices, Plaintiff
has suffered the indignity of discrimination, the invasion of her right to be free from
discrimination, and great humiliation which is manifest in physical illnesses and emotional
stress on the relationships between Plaintiff and her friends, family, and colleagues.

84.    That as a further direct and proximate result of said unlawful employment practices, Plaintiff
has suffered depression, extreme mental anguish, outrage, severe anxiety, shameful
embarrassment among her friends, colleagues, and co-workers, damage to her reputation,

disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, respectfully requests this Court to provide the following equitable and legal remedies:

    a.    Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

    b.    Order a permanent injunction prohibiting Defendants from further acts of sexual discrimination and sexual harassment and retaliation for opposition to sexual discrimination and sexual harassment.

    c.    Award Plaintiff all costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

    d.    Award Plaintiff a judgment against Defendants for lost employment benefits, reinstatement, front pay, back pay and other compensatory damages.

    e.    Award Plaintiff pre-judgment interest.

    f.    Grant judgment against Defendants for punitive damages for willful and wanton conduct.

    g.    Enter an order requiring Defendants to implement effective steps to eliminate sex discrimination and sexual harassment from Defendants' organizations.

    h.    Grant such other and further relief as this Court deems just and proper.

## COUNT II
## COMPLAINT OF SEXUAL HARASSMENT UNDER THE ILLINOIS HUMAN RIGHTS ACT DIRECTED AT BOARD OF EDUCATION AND RANOULE TATUM

85.    That Plaintiff incorporates the preceding paragraphs by reference here.

86.    That throughout her employment, Plaintiff has been and remains a conscientious employee who performed assigned tasks in an acceptable manner consistent with Defendants' standards and regulations.

87.  That Defendant condoned the sexual harassment of Plaintiff and failed to maintain a harassment-free work environment by failing to provide adequate training, counseling, and instructions to its employees and officers.

88.  That Defendants condoned the sexual harassment of Plaintiff and failed to maintain a harassment-free work environment by failing to employ an effective anti-sexual harassment policy with respect to its employees and officers.

89.  That as a result of these failures by the Board of Education, Tatum continued to force his unwelcome sexual advances and offensive conduct upon Plaintiff and served to intimidate and frighten her.

90.  That Defendants' treatment of Plaintiff was motivated by evil motive and intent, and was recklessly and callously indifferent to Plaintiff's federally protected rights.

91.  That the sexual harassment that Plaintiff was subjected to at the hands of Defendants, its agent, representative and employee was persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile and intimidating work environment for said Plaintiff.

92.  That said continuous and persistent sexual harassment adversely affected the terms and conditions of Plaintiff's employment with the Board of Education.

93.  That as a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation which is manifest in physical illnesses and emotional stress on the relationships between Plaintiff and her friends, family, and colleagues.

94.  That as a further direct and proximate result of said unlawful employment practices, Plaintiff

has suffered depression, extreme mental anguish, outrage, severe anxiety, shameful

embarrassment among her friends, colleagues, and co-workers, damage to her reputation,

disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to provide the following equitable
and legal remedies:

   a.   Advance this case on the docket, order a speedy hearing at the earliest
        practicable date and cause this case to be expedited in every possible way.

   b.   Order a permanent injunction prohibiting Defendants from further acts of
        sexual discrimination and sexual harassment and retaliation for opposition to
        sexual discrimination and sexual harassment.

   c.   Award Plaintiff, all costs of litigation, including reasonable attorneys' fees
        and expert fees and expenses.

   d.   Award Plaintiff, a judgment against Defendants, for lost employment
        benefits, reinstatement, front pay, back pay and other compensatory damages.

   e.   Award Plaintiff pre-judgment interest.

   f.   Grant judgment against Defendants for punitive damages for willful and
        wanton conduct.

   g.   Enter an order requiring Defendants to implement effective steps to eliminate
        sex discrimination, sexual harassment and retaliation from Defendants'
        organizations.

   h.   Grant such other and further relief as this Court deems just and proper

## COUNT III
## COMPLAINT OF PLAINTIFF OF ASSAULT AND BATTERY DIRECTED AT BOARD OF EDUCATION AND RANOULE TATUM

42.   Plaintiff incorporates the preceding paragraphs by reference here.

43.   That Tatum intended to engage in offensive and harmful physical contacts with Plaintiff's

body.

44.    That Tatum's conduct in touching and attempting to touch Plaintiff placed her in apprehension of imminent physical contacts.

45.    That Plaintiff is entitled to be free from willful and wanton conduct.

46.    That as a result of Tatum's conduct, Plaintiff suffered and continues to suffer from depression, fright, physical illnesses, mental anguish, humiliation and embarrassment.

47.    That Tatum's conduct in subjecting Plaintiff to unwanted and unlawful physical contact was in violation of the law.

48.    That Defendants had notice of the assaults and batteries that Tatum was inflicting on Plaintiff.

49.    That Defendants were negligent in hiring, supervising, and retaining Tatum in their employ.

50.    That Defendants could have prevented the repeated assaults and batteries against Plaintiff by taking reasonable care in hiring, supervising, disciplining, or even by firing Tatum..

51.    That as a result of Defendants' conduct, Plaintiff suffered and continues to suffer from depression.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court provide the following equitable and legal remedies for relief:

a.    Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

.

b.    Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

c.    Award Plaintiff a judgment against Defendants for compensatory damages

for the fright, humiliation, embarrassment, physical illnesses and mental anguish suffered by Plaintiff as a result of Tatum's conduct.

d.      Grant judgment against Defendants for punitive damages, as permitted by law, for willful and wanton conduct.

e.      Grant such other and further relief as this court deems just and proper.

**COUNT IV**
**COMPLAINT OF PLAINTIFF OF INTENTIONAL INFLICTION**
**OF EMOTIONAL DISTRESS DIRECTED AT BOARD OF EDUCATION**
**AND TATUM**

52.     Plaintiff incorporates preceding paragraphs by reference here.

53.     While acting within the scope of his employment, Tatum subjected Plaintiff to sexual advances and sexual harassment during her employment.

54.     While acting within the scope of his employment, Tatum subjected Plaintiff to physical assaults.

55.     That the Board of Education, through its employee Tatum, intentionally inflicted severe emotional distress and mental anguish on Plaintiff.

56.     That Tatum acted willfully and intentionally in that he knew that Plaintiff would suffer and did suffer extreme emotional and physical distress as a result of Tatum's extreme, oppressive and unreasonable conduct.

57.     That Tatum's conduct amounts to intentional infliction of emotional distress because said conduct was extreme and outrageous and beyond the bounds of moral decency such that no reasonable person could be expected to endure it.

58.     That as a result of Tatum's conduct, Plaintiff has suffered and continues to suffer severe emotional distress, fright, physical illnesses, mental anguish, humiliation and embarrassment.

59.     That Defendants could have prevented the repeated extreme and outrageous conduct Tatum imposed upon Plaintiff by taking reasonable care in supervising, disciplining, or firing Tatum.

60.     That as a result of Defendants' conduct, Plaintiff suffered and continues to suffer from emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court provide the following equitable and legal remedies for relief:

a.      Advance this case on the docket, order a speedy hearing at the earliest practicable date and cause this case to be expedited in every possible way.

b.      Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses.

c.      Award Plaintiff a judgment against Defendants for compensatory damages for the fright, humiliation, embarrassment, physical illnesses and mental anguish suffered by Plaintiff as a result of Tatum's conduct.

d.      Grant judgment against Defendants for punitive damages, as permitted by law, for willful and wanton conduct.

e.      Grant such other and further relief as this court deems just and proper.


Respectfully Submitted,
Alisha Atwater


By:  _/s/ Uche O. Asonye
     One of Her Attorneys

Uche O. Asonye - 6209522
Jason D Keck - 6303665
Asonye & Associates
39 South LaSalle Street, Suite 815
Chicago, Illinois 60603

(312) 795-9110
(312) 795-9114 (Fax)